## ZACK GRAGG v. JARED P. BARNES.

NEW NOTE MADE BY SURETY, *Not an Acknowledgment of Existing Liability.* On October 1, 1875, one, G., as surety, signed a promissory note of the amount of $1,822.50, payable one day after date to the order of the bank. On April 17, 1876, G., the said surety, executed his own note to the bank for the full amount of the note upon which he was surety, and thereon the bank wrote across the face of the first note, "Received of G., surety, $1,949.04 in full payment," and the cashier signed his name thereto. This was upon an arrangement and understanding between the surety and the bank that the note of October 1, 1875, should be turned over to

the surety solely for the purpose of enabling him to collect from the principal, or from property which it was supposed could be reached as the principal's, the amount of the note or as much thereof as he could; that the surety was to commence suit against the principal for that purpose, turn the amount collected over to the bank to be credited on the note, and assign to it the judgment, if any, obtained against the principal, and be entitled to receive from the bank the new note, and that said new note be taken and held by the bank solely as security that the surety would faithfully perform his part of the agreement. *Held*, That said new note of the date of April 17, 1876, was not an acknowledgment of an existing liability on the part of the surety for the first note dated October 1, 1875, and was not a promise to pay that note.

*Error from Jefferson District Court.*

ACTION by *Jared P. Barnes* against *Zack Gragg* and *The Valley Bank and Savings Institution*, brought December 7, 1880, in the district court of Jefferson county. On November 13, 1882, the plaintiff, upon leave of the court, filed an amended petition in words and figures as follows, (court and title omitted:)

1. Plaintiff says: That the defendant, the Valley Bank and Savings Institution, was on the 1st day of October, 1875, and has been ever since then a corporation duly incorporated under the laws of the state of Kansas; and as such corporation had during all of said time full power and authority to make all the contracts and perform all the acts hereinafter alleged to have been made and done by it.

2. That on the 1st day of October, 1875, one John Gragg as principal, and defendant Zack Gragg as surety, for value received executed to the defendant, the Valley Bank and Savings Institution, their promissory note of that date, whereby they promised to pay to the order of M. P. Evans, cashier of said corporation, the sum of $1,822.50, one day from date, with interest thereon at the rate of 12 per cent. per annum.

3. A copy of said promissory note is hereto attached, marked "Exhibit A," and made a part of this petition. No indorsements have ever been made on said note; but on April 28, 1876, the said M. P. Evans wrote across the face of said note the following words, to wit: "April 28, 1876, received of Zack Gragg, surety, $1,949.04, in full payment.—M. P. EVANS, Cashier," &c., in manner as shown in said "Exhibit A."

4. Up to said April 28, 1876, nothing had been paid on said promissory note, and at said date the said John Gragg had no property standing in his name out of which anything could be made on execution; but there was some real estate standing in the name of a third party, which real estate the defendant, Zack Gragg, thought could be subjected to the payment of the said John Gragg's debts. Whereupon, for the purpose of an acknowledgment by the said Zack Gragg of an existing liability of the said Zack Gragg for and upon the debt shown by said promissory note, and for the purpose of enabling the said Zack Gragg to attempt to make said claim out of the property of the said John Gragg, the said corporation and the defendant, Zack Gragg, then made the following arrangements and contracts, to wit: The said corporation caused its cashier to write across the face of said note the words aforesaid and as shown in "Exhibit A," and the said note was then delivered by said corporation to the said Zack Gragg, and the said Zack Gragg then executed to the said corporation his promissory note, dated April 17, 1876, whereby he then in writing acknowledged an existing liability on his part to said corporation for and upon the indebtedness for which said note, dated October 1, 1875, was given, and whereby he then in writing promised to pay the same. A copy of said promissory note, dated April 17, 1876, and all the indorsements thereon, is hereto attached, marked "Exhibit B," and made a part of this petition. At the time of the delivery of said note, dated October 1, 1875, by said corporation to said Zack Gragg, and the execution by the said Zack Gragg of said note, dated April 17, 1876, and as a part of the same transaction, it was then agreed by and between said Zack Gragg and said corporation that said Zack Gragg should institute and carry on legal proceedings for the purpose of subjecting property of said John Gragg to the payment of the debt for which said note, dated October 1, 1875, was given; and that said Zack Gragg should return said note, dated October 1, 1875, to said corporation, and should deliver and pay over to said corporation all that he should collect and obtain thereon. The said note, dated April 17, 1876, was then executed to said corporation by said Zack Gragg as an acknowledgment of his indebtedness as aforesaid, and as security that he would return to said corporation said note, dated October 1, 1875, and would pay over and deliver to said corporation all that he should collect and obtain upon it.

5. The said Zack Gragg, immediately after said April 28,

1876, commenced an action in the district court in and for the county of Jefferson, in the state of Kansas, against said John Gragg. A copy of his petition filed in said action is attached to the original petition herein, and marked "Exhibit C." In said action the said John Gragg was duly served with a summons, and afterward, and on the 28th day of September, 1876, the said Zack Gragg duly obtained a judgment against said John Gragg for the sum of $2,056.55, and at the time of obtaining said judgment, he, said Zack Gragg, caused said promissory note, dated October 1, 1875, to be filed in the said district court as a part of the papers in said action. The plaintiff herein does not now know where said last-named promissory note now is, and he is not able after diligent search to find the same among the records and files of said court or elsewhere.

6. Notwithstanding a reasonable time for said Zack Gragg to perform his contract, for which said note dated April 17, 1876, was given as security, had elapsed more than two years ago, yet the said Zack Gragg has all the time failed, neglected and refused to pay over or deliver anything whatever upon the indebtedness aforesaid, and has failed to pay over or deliver, either to said corporation or to the plaintiff herein, anything whatever collected or obtained by him upon said promissory note dated October 1, 1875, and has also failed to return said last-named promissory note; and said Zack Gragg had not during the past two years done anything whatever towards subjecting the property of said John Gragg to the payment of said indebtedness, and nothing whatever has been paid by said Zack Gragg, or John Gragg, or any other person, upon said indebtedness.

7. On the 10th day of September, 1879, the said corporation, for full value received, did, by M. P. Hillyer, the president thereof, sell, assign and transfer to the plaintiff herein, both of said promissory notes and all of the claims of said corporation for and upon the indebtedness for which said promissory notes were given.

8. The plaintiff herein, from the time of said sale and transfer to him by said corporation until February 25, 1880, believed that said note dated April 17, 1876, was an absolute original evidence of indebtedness of the said Zack Gragg, and on the 19th day of September, 1879, said plaintiff commenced an action in said district court against said Zack Gragg on said last-named note as an original absolute evidence of indebtedness, in which action plaintiff was defeated

by allegation and testimony by and on behalf of said Zack Gragg that said note was given as security as hereinbefore stated.

'9. By reason of the matters hereinbefore stated, there is due from the defendants to the plaintiff the sum of $1,822.50, with interest thereon from October 1, 1875, at the rate of twelve per cent. per annum.

Wherefore, plaintiff prays judgment against the defendants herein for the sum of $1,822.50, with interest thereon from October 1, 1875, at the rate of twelve per cent. per annum.

KEELER & GEPHART,<br>
<em>Attorneys for Plaintiff.</em>

EXHIBIT A.

$1,822.50.                    VALLEY FALLS, KAS., Oct. 1, 1875.

One day after date we promise to pay to the order of M. P. Evans, cashier, at the Valley Bank and Savings Institution, eighteen hundred and twenty-two 50-100 dollars, with interest at twelve per cent. per annum after due until paid; also costs of collecting, including reasonable attorney's fees, if suit be instituted on this note.    Value received.

Witness:                         JOHN GRAGG,
  M. P. HILLYER.                 ZACK GRAGG, his X mark.

April 28, 1876, received of Zack Gragg, surety, $1,944.04 in full payment.
                                 M. P. EVANS, Cashier, etc.

EXHIBIT B.

$1,941.23.                    VALLEY FALLS, KAS., April 17, 1876.

One day after date I promise to pay to the order of M. P. Evans, cashier, at the Valley Bank and Savings Institution, nineteen hundred and forty-one and 23-100 dollars, with interest at twelve per cent. per annum after due until paid; also costs of collecting, including reasonable attorney's fees, if suit be instituted on this note.    Value received.

Witness to mark:                 ZACK 'GRAGG, his X mark.
  M. P. HILLYER.

Indorsements on said note are as follows: "Without recourse.—M. P. HILLYER, Pres't."

On December 5, 1882, the defendant filed his answer to the amended petition, setting up among other things the three-years and five-years statute of limitation; and denying the allegations of the petition, and asserting that in the original action of Barnes v. Gragg it was adjudged and determined that the note dated April 17, 1876, and marked "Exhibit B," was given solely as security for the faithful performance of the contract stated in the answer.    On the same day the plaintiff filed his reply to such answer.

Trial had by the court, a jury being waived, at the May term for 1883.    At the trial, the plaintiff introduced the following evidence:

1. The original note attached to the amended petition, marked "Exhibit B."

20—32 KAS.

2. A duly-certified copy of the action of Jared P. Barnes against Zack Gragg, lately pending in this court, and reported in 28 Kas. 51.

3. Henry Keeler was a witness, who testified: "That he was present at the trial of the case referred to in the certified copy presented, and that the testimony of Zack Gragg given in that case was set out in the copy of the case substantially as Mr. Gragg gave it."

4. Mr. Hillyer, who testified: "That he was president of the Valley Bank and Savings Institution on April 17, 1876, the time the note was made and for some years thereafter, and also at the time of the assignment of the note to the plaintiff; that at the time of the assignment it was intended by the bank and himself as president, to sell, assign and transfer to the plaintiff not only the note dated April 17, 1876, but also the entire claim of said bank upon the indebtedness of Zack Gragg."

Thereupon the plaintiff rested.

The defendant, Zack Gragg, to maintain the issue on his part, introduced in evidence the petition, answer, reply, verdict and judgment in the original case of J. P. Barnes *v.* Zack Gragg, and then testified among other things: "I am one of the defendants in this case. The note dated October 1, 1875, was given in renewal of other notes held by the Valley Bank against John Gragg. These other notes were for borrowed money. I was only security on the note. John was bankrupt, and Mr. Hillyer, the president of the bank said if I would take this note up so as to bring suit on it and get judgment, that a piece of land belonging to John and standing in the name of Hick & Gephart could be subjected to the payment of the judgment; so he proposed that he would write across the face of this note that it was paid by me, and that then I could as the surety bring suit on the note against John, and that if I collected anything on the note or on the judgment, I should pay it over to the bank, or assign the judgment to the bank if it so desired; and that to secure the bank in the performance of my part of the agreement I should give it the note dated April 17, 1876. I hesitated about giving the note for some time, and consulted with Mr. R. D. Simpson. Hillyer assured me that the note should not be collected unless I failed to comply with my agreement, and then I consented to give the note. It was distinctly agreed that the note should be held as security only; that I would do as I agreed in relation to suing on the first note and paying over to the bank

whatever was received on the judgment, and that I should assign the judgment whenever the bank desired me to do so. The note was not given for any other purpose nor with any other understanding. Suit was brought on the first note in my name, and judgment was obtained against John Gragg, but nothing was ever collected. · J. B. Johnson brought the suit as attorney for the bank and myself. The bank employed him, and I suppose paid him — I did not. The bank had control of the case. I never received one cent on the judgment on the first note referred to. I have always been willing to assign the judgment to the bank, to Mr. Hillyer, or to the plaintiff, or to any one they may desire, and I have frequently offered to do so, but they would not accept such assignment. They have never asked me to assign to them, or either of them. I have never paid anything on either of said notes. There was no agreement or understanding that I was to be released from my indebtedness upon the original note signed by me as surety, except as the same should be paid by the bank."

Then R. D. Simpson was introduced on behalf of the defendant, who testified, among other things, as follows: "On April 17, 1876, I went with Gragg over to the bank, and we met Mr. Hillyer in the bank. Mr. Hillyer said that the bank held Zack and John Gragg's note for about $1,800; that John, the principal, was bankrupt; that Hicks & Gephart had some land of John's which they held in their name; that if they were to indorse the note paid by Zack, that Zack, as security, could bring suit in his name against John, get judgment, and levy on the land in Hicks & Gephart's name, and likely collect the note; that it would be better to bring the suit in Zack's name, on account of the prejudice against the bank. But Mr. Hillyer said he wanted Zack to sign the note of April 17, 1876, (which he then showed me,) as security that Zack would comply with his agreement to pay over to the bank any money collected on the first note, and in case not all was collected that he would assign the judgment to the bank whenever the bank so desired. Hillyer said the note should not be collected, but should be kept by the bank as security that Zack would comply with his agreement. I then said to Zack that, with the understanding as stated by Mr. Hillyer, I could see no objections to his signing the note, and he then signed it and we left the bank."

Then J. B. Johnson was sworn on behalf of the defendant, who testified: "I was one of the attorneys who brought the suit of Zack Gragg v. John Gragg, that has been referred to

in this case. Very soon after the note of April 17, 1876, was executed, I think on the same day, I was in Valley Falls, and met Mr. Hillyer. He employed me to bring that suit. He told me that Zack Gragg had given the note just mentioned, and that it was understood that the note of October 1, 1875, was to be sued on in the name of Zack Gragg, and that the land held in the name of Hicks & Gephart was to be levied upon, and recovered if possible. After he explained the condition of the title to the land, I advised him that upon the facts stated the land could be applied to the judgment, if any judgment could be obtained. Afterward, facts came to the knowledge of Hillyer, and through him to me, that led us to believe that the land could not be recovered, and I so advised him, and the effort to get the land was abandoned. Hillyer said that the note of April 17, 1876, was given as security that Gragg should pay over to the bank any money collected by him from John, and that if required he would assign the judgment to the bank. I was one of the attorneys for Zack Gragg in the case of Barnes v. Gragg, that was taken to the supreme court. I was at the trial in the court below. The main controversy in that case was as to whether the note of April 17, 1876, was given as security as I have above stated. Evidence was offered on both sides, Gragg claiming that it was for no other purpose than as security that he would comply with his agreement, and plaintiff Barnes insisting that it was not so given. The case was fully tried upon its merits."

The defendant rested, and the foregoing was all the material evidence presented. The court found that the allegations in the plaintiff's amended petition were true, and further found that there was due the plaintiff from the defendant the sum of $3,490, and rendered judgment accordingly. The defendant excepted to the findings and judgment, and brings the case here.

*J. B. Johnson,* for plaintiff in error.

*Keeler & Gephart,* and *W. C. Webb,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: In the original action of Barnes v. Gragg, to recover $1,941.23 and interest upon the note of April 17,

1876, attached as "Exhibit B" to the petition filed in this case, it was decided that at the time of the execution of the note, the arrangement and understanding between the bank and Zack Gragg was that the note of October 1, 1875, for $1,822.50, was turned over to Zack Gragg — who was the surety on the note — solely for the purpose of enabling him to attempt to collect from John Gragg — the principal on the note — or from property which it was supposed could be reached as his, the amount of the note, or as much as he could; that he, Zack Gragg, was to commence suit against John Gragg for that purpose, turn the amount collected over to the bank to be credited on the note of October 1, 1875, and assign to it the judgment, if any, obtained against John Gragg, and be entitled to receive from the bank the note of April 17, 1876; and that this note was taken and held by the bank solely as security that Zack Gragg would faithfully perform his part of the agreement. (28 Kas. 51.)

The present action was commenced December 7, 1880, upon the first note, dated October 1, 1875, and the petition alleged concerning the note dated April 17, 1876, that at the time it was executed it was agreed between Zack Gragg and the bank that said Gragg should institute and carry on legal proceedings for the purpose of subjecting the property of John Gragg, the principal on that note, to the payment of the same, and that Zack Gragg should return the note dated October 1, 1875, to the bank, and deliver and pay over to the bank all that he could collect upon the note. The petition further alleged, in addition to the usual allegations in an action upon a promissory note, that on April 17, 1876, Zack Gragg executed the note of that date "whereby he then, in writing, acknowledged an existing liability upon his part" upon the indebtedness for which the note of October 1, 1876, was given. The evidence in the case establishes that Zack Gragg performed his part of the agreement entered into at the time of the execution of the note of April 17, 1875. J. B. Johnson was employed by the bank to bring the suit of Zack Gragg v. John Gragg, and the evidence is conclusive that Zack Gragg

did not collect anything from John Gragg upon the judgment
in the case, or from the property which it was supposed at the
time the action was commenced might be reached.   In regard
to the non-return of said note of October 1, 1875, nothing
need be said, as the matter is disposed of in *Barnes v. Gragg*,
28 Kas. 51, 59.

At the commencement of this action more than five years
had elapsed after the note sued on had become due.   To take
the case out of the statute of limitations, it is claimed that the
note executed April 17, 1876, was, *first*, an acknowledgment
of the existing liability of the note of October 1, 1875; and
*second*, that the note of April 17, 1876, was literally a promise
in writing to pay the note of October 1, 1875.   It seems to
be conceded that the note of April 17, 1876, was given for no
other purpose than to secure the performance of the oral
agreement between Zack Gragg and the bank, heretofore
stated; but notwithstanding this, it is claimed by the counsel
of the defendant in error, plaintiff below, that the effect of the
execution of the note of April 17, 1876, was to acknowledge
the note of October 1, 1875, as an existing liability.

We do not so regard it.   The second note, dated April 17,
1876, does not refer to the first note, and can in no way be
connected with it, excepting by oral evidence.   It does not
purport on its face to be an acknowledgment of a prior indebt-
edness, and it does not purport anywhere to be a promise to
pay anything except what is stated therein.   In our opinion,
the statute of limitations relied upon by the plaintiff in error,
defendant below, is fatal to any recovery, and there is nothing
whatever in the record to take the case out of the statute.
We do not think that the indebtedness embraced in the origi-
nal note was revived by the execution of the second note, nor
do we deem the second note to be a promise to pay the first
note.

In the case of *Hanson v. Towle*, 19 Kas. 273, it was held
that to prevent the running of the statute of limitations upon
an indebtedness, there must be an unqualified and direct
admission of a present subsisting debt on which the party is

liable. This part of the opinion has never been changed or modified, and is the law of the state to-day. (*Elder v. Dyer*, 26 Kas. 604.) In the latter case, the letter of Elder contained the express statement, "I do not want to be held longer on that note." In construing the entire language of the letter, this court held that it was equivalent to saying:

"I am now held on the note, but I do not wish to be held any longer than it will be necessary for you to obtain a new surety on the debt." "No set phrase or particular form of language is required in the acknowledgment of an existing liability; anything that will indicate that the party making the acknowledgment admits that he is still liable on the claim; that he is still bound for its satisfaction; and that he is still held for its liquidation and payment, is sufficient to revive the debt or claim." (*Elder v. Dyer*, supra.)

In this case, there is nothing in the note of April 17, 1876, which indicates that Zack Gragg was liable on the original note of October 1, 1875, or that he was still bound for its satisfaction or payment. The difficulty under which the plaintiff below labors grows out of a misunderstanding concerning the execution of the note of April 17, 1876. Prior to the trial of the case of Barnes *v.* Gragg in the district court of Jefferson county to recover upon this note of April 17, 1876, the bank and plaintiff below insisted that the note was taken in payment for the principal and interest of the joint note of October 1, 1875. On the other hand, Zack Gragg claimed that the note was executed solely as security for the faithful performance of the agreement between him and the bank heretofore stated. In the action brought upon the first note, the claim of Zack Gragg was sustained. Plaintiff below seems to have relied upon his understanding of the contract between the bank and Gragg until the statute had run against the note of October 1, 1875; but after judgment in the first case of Barnes *v.* Gragg, this action was instituted, and as the note of October 1, 1875, was then barred, unless taken out of the statute by some action on the part of Gragg, it seems to have been imagined that Gragg could be held liable upon the original note of October 1, 1875, upon the theory that the note of April 17, 1876, was

an acknowledgment or promise in writing of the former note. This theory has no support.

Our conclusion therefore is, that the judgment of the district court must be reversed, and the cause remanded for a new trial.

All the Justices concurring.